IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GRANT NEIBAUR AND SONS FARMS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 4:11-CV-159-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it the BLM's motion to deem admitted ninety-seven requests for admission. The motion is fully briefed and at issue. The Court will grant the motion in part and deny it in part for the reasons expressed below.

## LITIGATION BACKGROUND

In this lawsuit, plaintiffs sue the BLM, claiming that its application of the DuPont chemical Oust in 1999 and 2000 caused damage to plaintiffs' crops – specifically sugar beets, potatoes and wheat – in 2002 and 2003. A related case, brought by a group of different farmers making the same claims, went to trial in this Court in 2009. At the conclusion of that trial, the Court entered Findings of Fact and Conclusions of Law finding, among other things, that the BLM was 40% responsible for the damage to the plaintiff farmers and defendant DuPont was 60% responsible. *See Findings of Fact and*

**Memorandum Decision & Order - 1**

*Conclusions of Law (Dkt. No. 1681 in Adams v US, 4-03-CV-49-BLW).* The Court will refer to that earlier case as *Adams*.

Due to the similarity of claims and counsel, the BLM served requests for admission on the plaintiffs here, asking them to admit to many of the findings made by the Court in its Findings of Fact and Conclusions of Law in *Adams* . For example, the BLM's requests for admission 2 through 47 (except for 21, 32, 33, & 40) quote directly from the Court's Findings of Fact in *Adams* and ask the plaintiffs to admit those facts. Thus, request no. 3 asks plaintiffs to admit that "each year, wildfires burn thousands of acres of BLM land." Request no. 7 asks plaintiffs to admit that Idaho wildfires are "fueled by cheatgrass, and they end to be very large, sometimes catastrophic." Requests nos. 18 to 31 (excluding 21) seek admissions relating to the BLM's testing of various herbicides and selection of Oust, and again quote directly from the Court's findings.

Other requests – nos. 48, 49, 52, 55, 56, 58-69, 71-74, 79-90, 92 & 93 – quote from the BLM's proposed Findings of Fact that it filed in *Adams*, rather than from the Court's Findings of Fact. For example, request no. 59 asks plaintiffs to admit that "DuPont represented to BLM that the half-life of Oust was short." Request no. 90 asks plaintiff to admit that "in determining whether a burned area required rehabilitation, each BLM district office considered range and habitat support provided by the land."

Finally, there are other requests that are tied to specific transcript page numbers or exhibits from *Adams*, or seek admissions on mixed questions of law and fact. For example, request no. 91 asks plaintiffs to admit that "there was no negligence by the

**Memorandum Decision & Order - 2**

United States during the implementation of the Oust treatment." Request no. 21 asks plaintiffs to admit that "BLM's decision to use Oust was susceptible to a balancing of policy goals, such as wildlife restoration, protecting property from future wildfires and allocating resources in a cost-effective manner."

    The plaintiffs objected to each of these requests, stating that the requests sought irrelevant information because the parties had stipulated to the BLM's 40% liability. The plaintiffs argued that the only remaining questions concerned specific causation and damages, and that these questions did not address those issues.

    This response ignores the BLM's discretionary function exception defense. The requests seek to establish Oust's characteristics and the environmental context within which the BLM made its decision to apply Oust. This information is important in determining how and why the BLM arrived at its decision to apply Oust, and is therefore directly relevant to the BLM's discretionary function defense.

    Moreover, these same requests concern important background information for the specific causation inquiry. For example, Oust's potency and persistence in the soil will be critical factors in determining whether Oust actually damaged the plaintiffs' crops at issue here. For all these reasons, plaintiffs' relevance objection must be rejected.

    Plaintiffs also objected on the ground that "the information to answer these requests was not known to plaintiffs nor readily obtainable." *See Plaintiffs' Response (Dkt. No. 32-3)* at p. 3. Plaintiffs argue that they are entitled to investigate these asserted facts to determine their accuracy before being compelled to admit or deny them.

**Memorandum Decision & Order - 3**

Rule 36(a)(4) allows plaintiffs to refuse to answer based on a lack of knowledge only if they "state that [they have] made reasonable inquiry and that the information [they] know[] or can readily obtain is insufficient to enable [them] to admit or deny." The plaintiffs' response – that they were entitled to pursue discovery before deciding whether to challenge the Court's factual findings – was essentially a variation of the response permitted by Rule 36(a)(4). Plaintiffs were saying that they needed more time to make their "reasonable inquiry" – that is, they needed to complete discovery.

Plaintiffs' response is not expressly permitted by Rule 36(a). But it would be unjust to require plaintiffs to admit or deny factual findings made in *Adams*, a case in which they were not parties, without first having an opportunity to do discovery. Rule 36 "seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice." *Conlon v U.S.*, 474 F.3d 616, 622 (9th Cir. 2007). The Federal Rules as a whole are intended "to secure the just, speedy, and inexpensive determination of every action." *See* Fed.R.Civ.P. 1. Forcing plaintiffs to admit or deny before conducting discovery would sacrifice justice for efficiency, a trade-off that would not promote the goals of Rules 1 or 36. Accordingly, the Court finds that the plaintiffs' response was reasonable under Rule 36(a) at the time it was made.

However, discovery has since closed, and there is no longer any excuse for plaintiffs to avoid answering the requests. As discussed above, the requests seek information directly relevant to the issues of specific causation and discretionary function. Rule 36 is designed to "facilitate proof with respect to issues that cannot be eliminated

**Memorandum Decision & Order - 4**

from the case and . . . to narrow the issues by eliminating those that can be." *Conlon*, 474 F.3d at 622. The BLM is entitled to know if the plaintiffs are going to challenge the factual findings made in *Adams* and the other matters addressed in the requests.

Moreover, Rule 26(e)(1) puts plaintiffs under a continuing duty to supplement their responses to requests for admission when plaintiffs "learn that in some material respect the . . . response is incomplete or incorrect." Now that discovery is complete, the plaintiffs' response becomes incomplete – the lack of opportunity to conduct a "reasonable inquiry" can no longer serve as an excuse, and plaintiffs have a duty under Rule 26(e)(1) to supplement their earlier response. Accordingly, it is now time for plaintiffs to provide answers to the requests.

The plaintiffs argue, however, that "[t]he [BLM] want to re-file its discretionary function motion from the *Adams* case, but because no facts have been developed in this case to support its motion, it asked plaintiffs to admit the necessary facts." *Plaintiffs' Reply Brief (Dkt. No. 33)* at p. 2. If plaintiffs have good reason to believe that the BLM cannot prove the facts necessary for the discretionary function exception, they are under no duty to admit those contested facts: "[C]aution should be exercised in compelling a party to admit something believed true where there is a reasonable ground for concluding that the party seeking the admission will fail to establish the point at trial." *8B, Wright, Miller and Marcus, Federal Practice & Procedure (2010)* at § 2261, pp. 365-66. On the other hand, if plaintiffs without good reason refuse to admit a matter, they will be required to pay the costs incurred in proving that matter. *Id*. at § 2265, p. 401.

**Memorandum Decision & Order - 5**

Thus, plaintiffs are under no compulsion to admit any of the requests that they have good reason to believe the BLM cannot prove in this litigation. But this only addresses how plaintiffs may respond in their Rule 26(e)(1) supplementation, and does not alter the Court's ruling that plaintiffs must file that supplementation.

**Conclusion**

The Court will grant in part and deny in part the BLM's motion to deem admitted the ninety-seven requests for production. The Court will deny the motion to the extent it seeks to deem the requests admitted, but will grant the motion to the extent it seeks supplemental answers by plaintiffs. The plaintiffs shall file their supplemental answers within thirty days from the date of this decision.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to deem requests for admission admitted (docket no. 32) is GRANTED IN PART AND DENIED IN PART. The motion is denied to the extent it seeks to deem the requests admitted, but is granted to the extent it seeks supplemental answers by plaintiffs.

IT IS FURTHER ORDERED, that plaintiffs file their supplemental answers to the requests for admission within thirty (30) days from the date of this decision.



DATED: **November 9, 2012**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 7**